# REPORTS OF CASES ADJUDGED

## IN THE

# SUPREME COURT OF PORTO RICO.

---

### BANCO TERRITORIAL Y AGRÍCOLA v. MORTGAGE BONDHOLDERS.[*]

#### No. 42.—Decided June 17, 1905.

ACTION—CAPACITY OF THE PARTIES.—The fact that the plaintiff delivered a copy of the complaint to a person who appeared at the trial as defendant does not necessarily imply that the former acknowledged the capacity of the latter, and he can attack the same if such defendant does not fully prove that he possesses such capacity.

ID.—Where a suit is filed against the holders of mortgage bonds of a certain series issued by a bank of *territorial credit*, it is necessary for a defendant to prove that he is a holder of bonds of such series in order that he may have capacity as a defendant in the suit.

BANKS OF TERRITORIAL CREDIT—MORTGAGE BONDS—PREFERRED CREDITS.—Mortgage bonds issued to bearer by a bank of *territorial credit* are secured in accordance with law by the credit and loans in favor of the bank which are specifically and singularly held for the payment of the bonds which are given preference over all other creditors or obligations, and are furthermore secured in general and preferentially by the credits resulting from all other transactions consummated with the capital of the bank.

ID.—HOLDERS OF MORTGAGE BONDS.—The holders of mortgage bonds issued by banks of *territorial credit* are the preferred creditors of the bank and have a right to proceed against all credits which the bank may have, or against any of them, in case their demands are not satisfied and they may resort to judicial proceedings therefor if necessary.

ID.—SECURITY OF SUBMORTGAGE IN FAVOR OF CERTAIN HOLDERS.—The fact that a bank of *territorial credit* issues a series of mortgage bonds and specifically and definitely submortgages in favor of such mortgage bondholders certain mortgage credits of the bank itself, does not have the effect of decreasing the amount of the credits of the general security which they all furnish in favor of all the mortgage bonds issued, nor does it imply that the holders of bonds of said series have any preferred rights over those of any other series, and in this sense the submortgage is not void, though it would be ineffectual if such a purpose were intended.

---

*The translator has not felt at liberty to attempt to harmonize the discrepancies existing between the Spanish and English versions of this opinion because both are signed copies.

(*Dec. Vol. 9.—1.*)

ID.—MORTGAGE CREDITORS.—The holders of mortgage bonds are creditors of the bank issuing the same, and the mortgage debtors are not bound directly to them, and the fact that the bank constitutes a submortgage specifically and definitely in favor of the holders of a certain series, does not in anywise prejudice any of the transactions authorized by law either for the extinction of the mortgages or with respect to the redemption of the bonds.

The facts are stated in the opinion.

*Mr. Juan Guzman Benitez* for appellant.

*Mr. López Landrón for respondent.*

Mr. JUSTICE WOLF delivered the opinion of the court.

A suit being prosecuted before the District Court of San Juan by the Banco Territorial y Agricola against the holders of bonds of the first and fifth emission with regard to the nullity and cancellation of said mortgages after having complied with the legal procedure, the said court (along with the opinions pronounced by two of its judges; that is, Tous Soto and Richmond) rendered judgment, which reads as follows:

"In the city of San Juan, Porto Rico, on the 2d day of May, 1904, there took place the public and oral hearing of the declaratory proceedings which, concerning the nullity of mortgages and other particulars, were prosecuted between parties who were, on one side, as plaintiff, the Banco Territorial y Agrícola de Puerto Rico, which was represented by Attorney Juan de Guzmán Benítez; and on the other, as defendants, the holders of the mortgage bonds issued by the bank, who were declared in default, with the exception of Julián E. Blanco y Sosa, of age, married, a property holder, and resident of this town, and in his name, and in the order in which they are enumerated, the Attorneys Angel García Veve, Eduardo Acuña Aybar and Rafael López Landrón.

"First. Finding that the Banco Territorial y Agrícola, on the 26th of March, 1895, appeared before the notary, José A. de la Torre, stating that Pio Martínez y Rivas and Guillermo Cortada had executed a mortgage deed in favor of the bank, in which deed it was set forth that the amounts stated in the same, are payable within fifteen years, and that the said parties had bound themselves to pay the aforesaid amounts to the bank in the same manner, within twenty-five years; and that still another mortgage debt had been contracted by Emilio Gómez y Martínez, which was payable in an identical manner within ten years; that the director of the bank, in representation of the aforesaid mortgage

loans, and in exercise of the power conferred upon him by the Commercial Code and its statutes, pursuant to a resolution of the council of administration of the bank, determined to effect the second emission of mortgage bonds payable to the bearer, to the amount stated, perfecting the present deed of mortgage obligation, consisting of a single series of 2,400 bonds, redeemable in twenty years by annual drawings, which are to take place at the end of each annual term, all the amounts, which during the year are received by the bank being applied to the payment of the mortgage loans above mentioned; the said bank binding itself to pay the amount of the bonds to the holders of the same within thirty days after the drawing has taken place; that in the event that the debtors should pay in advance the total or partial amount of the mortgage loans described at the beginning, the bank binds itself to withdraw or destroy a number of bonds equivalent to the amount of the payments made in advance, and to pay the value of the same; that although the capital of the bank and all its other property, credits and belongings, for the purpose of guaranteeing the payment of the bonds, are by law bound to answer, with preference over its other liabilities (for the greater security of emission of mortgage bonds), for the payment of the five mortgages described at the beginning, which he (the director of the bank) again specifies, he (the director) states that expressly that all the aforesaid mortgages have been appraised at their real value, and that the subsistence of this mortgage security depends upon the extinction of the first mortgages on which it has been constituted; the deed being signed by the director of the bank, the two instrumental witnesses and the notary who authorized the same; the said deed having been recorded in the Registry of Property of San Germán, respecting the properties pertaining to that district, suspended in Mayagüez with regard to the property situated at Las Marías, and recorded in the registry of property of this capital with reference to the second emission of mortgage bonds payable to the bearer, which are comprised in the same.

"Second. Finding that the aforesaid bank, by another deed of the 25th of November, 1895, before the notary, José Augustín de la Torre, mentioning other mortgage deeds, effected another emission of mortgage bonds payable to the bearer, which was the third emission in the same manner, and with the same conditions as the previous one, which emission was authorized only by the director of the bank, the two instrumental witnesses and the notary authenticating the same, and contained a clause (No. 8) to the effect that the subsistence of the sub-mortgages established in the deed of emission depends upon the

extinction of the respective mortgages on which they have been constituted, said document being recorded in the respective Registries of Property of Humacao, San Juan and San Germán.

"Third. Finding that the bank brought an action, enclosing in its writing the documents above mentioned, and requesting that the deeds of the 12th of January, 26th of March and 25th of November, 1895, and of the 2d of January and 25th of November, 1896, executed before the notary, José A. de la Torre, and that of the 1st of September, 1896, executed before the notary, Marico Guerra, be declared null and void because in said deeds submortgages were constituted in favor of the holders of the mortgage bonds of the bank, of the first, second, third, fourth and fifth emission, on the respective mortgage credits, enumerated in the action; (said request being made) for the reason that the said mortgages being the property of the respective bond-holders they cannot be submortgaged in favor of those same bondholders; that the records of the said submortgages which were made and appear in the same deeds are likewise null and void; that the court order the cancellation of those that may be in force at the time of the execution of the judgment, for which purpose orders should be issued to the respective registrars of property; and that, if any one should oppose the action he be condemned to the payment of the costs, said action being brought against the holders of the bonds of the first five emissions, and it being suggested in the same that, as the persons against whom the action was brought were unknown, said persons be summoned by means of edicts.

"Fourth. Finding that the facts stated in the action are: The constitution of the anonymous society Banco Territorial y Agrícola de Puerto Rico, whose principal object is the protection and encouragement of agriculture by means of mortgage loans of long terms, and which society, or bank, puts its capital in circulation in the form of mortgage bonds, making the emissions of the same in representation of several mortgages of long terms, the said bank having constituted in the five deeds of emission several submortgages on the same loans, in representation of which it emitted bonds in favor of these same values, which submortgages were recorded; but when the deed of the fifth emission was to be inscribed in the Registry of Property of Ponce, the inscription of the property was refused with the following observation: 'Refused because the submortgage constituted by the bank is null and void, as said bank has no power (by especially submortgaging a part of the aforesaid properties as a guarantee for a certain number of bonds) to withdraw part of the total mass of the

properties mortgaged in its favor from the general guarantee consti-
tuted under the law by all of them with regard to the total number
of mortgage bonds issued, or that may be issued, in representation of
the same, such act being contrary to the nature of banking institu-
tions of *territorial credit* and to the provisions of sections 206 and
208 of the Commercial Code; and as it does not seem that the said
defect can be cured the cautionary notice cannot be entered;' that
the bank took an appeal, which reached the Department of Registries,
and a decision was rendered on the 15th of January, 1898, which
clearly and distinctly fixed the legal doctrine applicable to mortgage
bonds issued in representation of mortgage loans of long terms made
by companies of *territorial credit;* that, in order to guarantee the
five emissions, the bank constituted submortgages in favor of bond-
holders on various mortgages held by said bank, according to a state-
ment containing and fixing the deeds of the 12th of January, 26th
of March, and 26th of November, 1895, and 2d of January, 1896,
executed before (the notary) Mauricio Guerra, which deeds are speci-
fied in the complaint, as well as the registries of property to which
they pertain; that some of the submortgages above mentioned have
been canceled in the registry of property, in consequence of adjudica-
tion and destruction of bonds effected in accordance with the statutes,
and pursuant to a judgment rendered in the District Court of Ponce,
and they are enumerated in the complaint as follows: No. 3, in the
third additional; No. 1, in the third additional; No. 5, in the fourth;
No. 1, in the fourth additional; Nos. 3, 4, 7, 8, 10, 11, 16, 17, 21, 23,
24, 26, 28, 30, 36, 37, 38, 39, 46, and 50, in the fifth; Nos. 18,
19, and 20 of the fifth were not recorded because they pertained to
the Registry of Ponce the registrar of which opposed the inscription
of the same; while the remaining submortgages set forth in the
statement referred to have not been canceled, and they are: Nos. 2
and 5 of the third emission (Nos. 2 and 5 of third emision); Nos. 1
and 4 of the fourth; and Nos. 1, 2, 5, 14, 32, 33, 34, 43, 48, and 53
of the fifth; in spite of the fact that receipts in full were issued for
the respective mortgages, the cause being that the registrars of prop-
erty refused to cancel the same, basing their refusal on the reasons
stated in this writing; that the remaining submortgages correspond
to mortgages which are in force, although executory proceedings are
in progress on account of nonpayment of some of the latter, which
for this reason at the termination of this declaratory action might be
found to have been canceled in consequence of a judicial sale, in
which case a declaration of nullity of the inscription would not be
necessary, the law cited being: Sections 21 and 23, paragraph 2 of

section 117, sections 199, 206 and 208 of the Commercial Code; section 39 of the Mercantile Regulations; sections 334 and 336 of the Civil Code; sections 1 and 3 of basis 3 of the charter of the bank; sections 10 and 11 of the said charter; the decision rendered by the Director of the Registries of the Colonies on the 15th of January, 1898; sections 33 and 79 of the Mortgage Law, and sections 82 and 459 of the Law of Civil Procedure.

"Fifth. Finding that, after the action had been admitted and the defendants summoned by edicts, Julián E. Blanco y Sosa, who was considered as a party, appeared in the proceedings, and thereupon the attorney of the bank presented a writing requesting that a copy of the complaint and the original documents accompanying the same be delivered to the said Blanco in accordance with section 319 of the Law of Civil Procedure, which request was complied with.

"Sixth. Finding that Blanco filed an answer to the complaint, alleging, besides, dilatory exceptions and a cross-complaint, and requesting the court to declare that the action cannot be successfully prosecuted on account of the defects which it contains; and although he said in his answer that this court had no jurisdiction and that the proceedings had were void, he did not sustain his assertion concerning such lack of jurisdiction in the act of the trial, nor did he make the slightest allegation with regard to the same, but requested, in the second place, that the action be dismissed in all its parts, with the costs against the plaintiffs, and in the third place that in case the action should be allowed, the cross-complaint brought by him be admitted in order that the amount (of the bonds) and the coupons due be paid to the bondholders, together with the corresponding premiums, or, in default thereof, that by a note in the registry or inscription it be made to appear that the ownership of the mortgages of the bank, which are mortgaged as security for the bonds, belongs to the holders of the same, and that the payment of the costs and of the damages caused to the defendants be imposed upon the plaintiff.

"Seventh. Finding that he stated as facts with reference to the first solution requested: That the plaintiff does not clearly state in the action the names of the persons against whom said action is brought, and in his additional prayer he says that they are unknown persons, inasmuch as their domicile is unknown; and in his second additional prayer he confesses that for this reason he does not enclose in his petition the copies of the complaint and of the documents, reserving to himself to do this when some of the defendants should present themselves, the law relative to this part being: Sections 62, 269, 271, 272, 274, 277, 279, 314, 315, 317, 325, and 532 of the Law of Civil

Procedure; section 170 of the Mortgage Law; and sections 70, 72, and 75 of General Orders No. 118, of 1899; the facts with reference to the second solution requested being as follows: The deed of the 21st of July, 1894, by which the Banco Territorial y Agrícola was constituted, utilizing section 117 of the Code of Commerce; that, according to basis 12 of the said deed, the capital and form of security are stated in basis 13; that, according to basis 3, the preferential operations of the bank will be to protect and encourage agriculture by means of loans of long terms, to acquire mortgage credits, and to issue mortgage bonds payable to the bearer, in accordance with sections 199 and 176 of the Code of Commerce; the bank having commenced its operations in 1894; and upon effecting various mortgage loans on the 12th of January, 1895, the bank, in representation of its mortgages and in conformity with sections of the Code of Commerce and of its statutes, made its first emission of mortgage bonds payable to the bearer, and the aforesaid public deed was executed, which comprised the third clause, by which the bank bound itself to pay the bonds to the holders of the same thirty days after the drawing had taken place in its own offices; by the fourth clause it bound itself to pay the coupons on the days fixed for the payment of the same; and in the seventh clause the bank said that, since its capital, its reserve funds on all its other property was by law bound to serve as security for the payment, with preference over all its other liabilities of a different nature, it specially mortgaged—for the greater security of the aforesaid emission and for the payment of the same—the mortgage credits mentioned in the deed, with the statement that the said deed would not prejudice a third party, if it was not recorded in the respective registries of property; that two months later, and after new loans had been made, the bank effected its second emission on the 20th of March, 1898, which emission, the same as the previous one, was recorded in the registries of property, except that of Mayagüez, (in which it was not recorded on account of some mendable defects); eight months later, on the 25th of November, 1895, after having made new mortgage loans, the bank effected a third emission, which was recorded in the registries (of property); and the same thing happened on the 2nd of January, 1896, in order to change the values in accordance with the new official money, which was then put in circulation, and to guarantee the increase resulting from the difference between the old and the new currency, and also with the fourth emission of the 25th of November, 1895, all of which facts appear from the deeds presented by the plaintiff; that the

imprudent measuers commenced in July, 1895, among which measures the purchase of the house is specially conspicuous, considerable sums of money being wasted, $52,419; the fifth emission was effected with the same obligations, formalities and requisites as the previous ones, and no objections were made in the registries, where it was presented, (except) in the Registry of Ponce where the inscription was refused, the note of refusal of the registrar referred to being copied in the fourth finding; that when an administrative appeal was taken from the aforesaid refusal of the Registrar of Ponce, the judge sustained the said refusal, which was reversed by the president of the *Audiencia* (superior court), and an appeal having been taken by the registrar, a decision was rendered by the General Direction of the Registries, on the 15th of January, 1898, a contentious action lying against said decision to the Council of State; the law being: Sections 21, 23, 117, 199, 204, 206, to 208, of the Code of Commerce; section 39 of the Regulations of the Mercantile Registry; basis 1 and 3 of the charter (of the bank); sections 2, 3, 23 to 25, 82, 146, 152 and 153, of the Mortgage Law; and sections 182 to 184, of the Regulations of the same.

"Eighth. Finding that the facts with reference to the third solution requested, or the facts of the cross-complaint are the same which are stated in the answer which he reproduces; and the law: The contents of the deed of emission of mortgage bonds; that after the quasi-contract between the bank and the bondholders has been executed, it is not left to the free and uncontrolled will and pleasure of one of the parties alone to change the conditions to the prejudice of the other party, and if the bank withdraws the mortgages by which it guaranteed its bonds, it must return the amount of the same, together with the coupons and premiums; and the bank sustains that the bondholders are the real owners of the mortgages mortgaged in their favor, and that nothing is more just and proper than to consolidate and guarantee the same to said bondholders; and that if they were cancelled, the rights of the bondholders would be exposed to danger while the bank was occupied in returning the amounts of the same; that stubborn opposition to the revocation is punished by the imposition of the payment of the costs and of the damages caused by such opposition.

"Ninth. Finding that after the cross-complaint had been referred to the bank for its information and reply, said bank requested that the exception of lack of personal capacity of the defendant be declared to be well founded, and that the cross-complaint be at all events dismissed with the costs; establishing as facts for the dilatory

exception: That proceedings be instituted against the holders of the mortgage bonds payable to the bearer of the five emissions, and that the summonses be made by edicts, for the reason that the domicile of the persons to be summoned is not known; that Blanco defends at this trial, his rights and those of all his companions, collectively, as was stated by his attorney when he appeared in the proceedings, without proving that he is a holder of mortgage bonds; nor that he represents the other bondholders; that upon answering the action, he formulates cross-complaint; the law being: Sections 532 and 534 of the Law of Civil Procedure; and that the evidence relating to the dilatory exceptions will be heard previously at the oral trial, and afterwards counsel will make their oral arguments when the incidental question will be decided; and with regard to the subject matter of the cross-complaint he reproduces the facts stated in the complaint referred to and the points of law, adding that it is impossible to accede to the same as it is based upon the erroneous principle which originated the petition for annulment; and that if the same should meet with success, the nature of the mortgage bonds would be completely changed, as they are not titles payable to the bearer like those mentioned in section 82 of the Mortgage Law, since bank bonds cannot be issued except by mortgage banks, according to the Code of Commerce, and he quotes basis 10 of the charter of the bank.

"Tenth. Finding that in consequence of a requisition made at the request of the defendant, the attorney of the bank produced first, the charter of the Banco Territorial y Agrícola de Puerto Rico, in basis 3 in which are set forth the operations to which said bank will devote itself, and among which is the making of mortgage loans on rural and town properties, and the emission of mortgage bonds payable to the bearer, in accordance with sections 199 and 176, of the Code of Commerce; the provisions of basis 8, being to the effect that the bank will issue, in representation of the mortgage loans made at long terms, bonds which shall bear interest, and which shall have the name of mortgage bonds, and be guaranteed by the whole mass of the properties mortgaged in favor of the bank, and by the capital and reserve funds of the latter; said bank being empowered, according to the basis 8, to issue such bonds every time it makes a mortgage loan at long term, to an amount equal to that of the loan, but always in such a manner that the total amount of the emissions represent a sum equal to the amount of the mortgages in force, constituted in favor of the bank, as a guarantee for said loans; according to the basis 11, every annual reimbursement of

bonds must comprise the number necessary in order that the amount of those remaining in circulation may not exceed that of the mortgage loans on long terms; and if payments should be made in advance on account of the said loans, the sums refunded must immediately be invested in other mortgages of the same class, unless the bank withdraws from circulation a number of mortgage bonds, the value of which is equal to the said sums; second, the deed of the 12th of January, 1895, of the first emission of mortgage bonds payable to the bearer; the deed of the 25th of November, 1895, of the fourth emission, in representation of mortgage loans set forth therein; two deeds of the second of January, 1896, one of them having been executed in compliance with the resolution of the bank, in regard to the bonds of the fourth emission, which was made on account of the exchange of the Mexican money for the Spanish provincial money, and for the purpose of amortizing the value of the bonds by that of new currency; and the other deed of the same date as the one mentioned was executed for the same reason or motive, for the third emission; and the deed of the 1st of September, 1896, of the fifth emission of mortgage bonds. Each of the aforesaid deeds is in representation of the mortgage credits stated therein, and contains, besides, the same conditions which are stated in the 1st and 2nd findings; but the mortgage debtors were not present at the execution of the sub-mortgages, nor has it been shown that they were notified of the same, or that it was brought to their knowledge; and it appears in all of those deeds that the subsistence of the sub-mortgages constituted depends upon the extinction of the respective mortgages upon which they have been constituted, but the names of the mortgage debtors do not appear in the same, nor does it appear that they were notified with regard to the submortgages; there being only inserted in the deed of the 12th of January, 1895; after the words: 'while they are not extinguished,' the following: 'until the complete amortization of the bonds and their coupons shall take effect;' but in the latter, clause 5 reads as follows: "in the event that the total or partial amount of the loans described be paid in advance, the bank binds itself to withdraw or destroy at once,—paying the amount of the same—a number of bonds, the aggregate amount of which is equivalent to that of the payments made, keeping the aforesaid amount of the loans in deposit—while it is engaged in such withdrawal or destruction of the bonds—for the purposes of using the same exclusively to that end," which clause appears in all the other deeds, and in the first and second findings set forth herein.

. "Eleventh. Finding that in the act of the oral trial, the defendant reproduced the dilatory exception of legal defect in the manner of bringing the action, while the plaintiff alleged that of lack of personal capacity of the defendants which he had taken in his reply to the revocation, both of which exceptions were overruled by a majority of the court, the associate Judge, Frank H. Richmond, dissenting in regard to the former, and the associate judge, José Tous Soto, with regard to the latter; whereupon the attorneys of the parties made their oral arguments alleging concerning the matter involved what they deemed convenient to their respective rights.

"The presiding judge, Juan Morera Martinez, being the *Ponente* in the case.

"First. Concluding that, inasmuch as the action was brought against the holders of mortgage bonds payable to the bearer which had been issued by the bank, it was impossible for the latter to designate the persons against whom said action was brought, as the said persons were unknown to the bank; and still less could the latter avail itself of the right granted by paragraph 1 of section 496 of the Law of Civil Procedure; for which reason the bank could request, as it does in its petition, that the holders of mortgage bonds of the first, second, third, fourth and fifth emissions effected by the bank which has brought the action on account of the respective mortgage credits enumerated in the complaint, be cited by edicts, and in this manner summoned to appear before the court, as is constantly done, and prescribed by law in the respective provisions of the same, among others, in the second paragraph of section 393 of the Mortgage Law, and by the judgments of the supreme court of the 5th of May, 1890, and the 4th of June, 1891; and for this reason the bank adds that it does not transmit, together with the complaint, the copies of the latter and of the documents, reserving to itself to do this when the defendants present themselves.

"Second. Concluding that the defendant himself, upon appearing in court, has recognized the right of the plaintiff to request the citations and summons in the manner stated, for which reason the alleged legal defect does not exist, which defect cannot be based either on the omission to present the copies of the complaint and of the documents, for the reason that said requisite is not essential to the complaint, but extrinsic or accidental, according to section 523 and paragraph 6 of section 532 of the Law of Civil Procedure; and as the plaintiff has complied with the first of said sections, no legal defect exists for the reasons stated, and the citation and summons of the defendants, which was made in the only manner possible, is valid

and efficacious, while the allegations with regard to the copies cannot meet with success, because the defendant upon appearing in court presented a writing to the bank, requesting that a copy of the complaint and the original documents accompanying the same, be delivered to him, on the ground that the same were comprised in section 519 of the Law of Civil Procedure.

"Third. Concluding that the allegations of lack of personal capacity of the defendant, is improper, inasmuch as the plaintiff has recognized his personal capacity by requesting that the aforesaid copies and original documents of the complaint be delivered to him, instead of requiring the defendant to prove his character or representation, as he pretended to do afterwards; and not having proved that he lacks the full enjoyment of civil rights and the proper character and representation, by means of the evidence which the plaintiff might have requested upon presenting the proofs which, at the proper time, he believed to be convenient, and which he deemed sufficient in order that the exception taken by him, might be successful.

"Fourth. Concluding that the statement made by the defendant Julian Blanco in the context of his writing of reply, "that in this action he defends not only his personal rights, but also, collectively, those of all his companions who are in the same situation," does not show that he appears in the name of the same, nor does this appear from the title of this writing, nor from those of the writings previously presented; nor has he been considered in this action as a party representing the other defendants, so that he could be required to prove said representation, and could have the said personal capacity.

"Fifth. Concluding that the lack of personal capacity of the defendant consists in that he does not possess that character (i. e. that of representative of the other defendants), which circumstances affect the form and not the essence of the law suit, that is, the character with which the defendant appears in the action, and not the question which is the subject-matter of the same, and which must be decided at all events, in view of the default of all the other defendants against whom the action has been prosecuted at the request of the plaintiff..

"Sixth. Concluding that the purpose of the Territorial Bank is to lend to the proprietor the money he may need, at a moderate rate of interest, and to enable him gradually to amortize his debt and for that purpose the proprietor applies to the bank, presenting the documents which show the reliability of the guarantee he offers,

and if the latter is sufficient the bank accedes to the request of the proprietor, delivering to him the amount requested, while the property or properties are mortgaged to guarantee the payment of the annual instalments and of the interest.

"Seventh. Concluding that the said banks in order to fulfill their mission and continue their loan transactions, issue mortgage bonds payable to the bearer which represent a value which is amortized in the manner prescribed by the statutes of the bank and by the provisions of section 11, Title I, Book II of the Code of Commerce, the fulfillment of said obligation being guaranteed by the properties mortgaged in favor of the bank, and besides, by the capital of the latter; for which reason the persons possessing the same are creditors of the bank and money lenders of the proprietors, with the advantage that they have nothing whatever to do with the latter, as the banking company is responsible to them for their rights and takes care of the collection of the credits, the bonds being the real instrument of territorial credit.

"Eighth. Concluding that this must be inferred from all the deeds of emission of the mortgage bonds, in which it is stated 'that the subsistence of the submortgage' constituted by the director of the bank (without the presence of the mortgage debtors and without any evidence that the latter were notified of the same) depends upon the extinction of the mortgages given as a guarantee for the emission set forth in the said deeds,' and the latter contain the additional statement that in the event that the total or partial amount of the mortgage loans described should be paid in advance by the debtors of the same, the bank binds itself to withdraw and destroy a number of bonds, the value of which is equivalent to the amount of the payments made in advance, and to pay the bonds so withdrawn and destroyed and to keep the amounts paid in advance in deposit while it is engaged in the withdrawal and destruction of the aforesaid bonds, and said statements which agree with the charter of the bank corroborate the fact that the latter alone is the party that can and must cancel the loans referred to, in view of basis 11 of the charter of the bank.

"Ninth. Concluding that nobody can repudiate his own action, and that the contracts, rights and obligations must be complied with without any excuse or pretext whatsoever, as the validity and fulfillment of the same cannot be left to the free and uncontrolled will and pleasure of one of the parties.

"Tenth. Concluding that there is no nullity and that the annulment of the inscriptions requested is not proper, as there is no defect.

which invalidates the contracts according to the law for the four years fixed by section 1208 of the Civil Code in order that said action may be brought, have elapsed, inasmuch as the aforesaid deeds were executed in 1895 and 1896, the last deed being of the first of September of the latter year, while the action is of the third of May, 1902, so that the legal term allowed by law for bringing the action has elapsed with excess.

"Eleventh. Concluding that by the collection of the amount of the mortgage by the mortgage creditor the submortgage becomes extinct, inasmuch as its existence does not depend upon the will of the holder of the submortgage, for, as the submortgage has a precarious existence, which depends upon the mortgage, it is evident that at the moment the mortgage ceases to exist, the submortgage must become extinct, for, according to the explanation of motives of the Mortgage Law of the Peninsula, upon explaning the precept of paragraph 8 of section 107, which is identical with that existing in our law, 'it is not within the power of the primitive mortgage creditor to give the submortgage creditor a more extensive right than his own with regard to the thing mortgaged.'

"Twelfth. Concluding that if the contrary of this reasoning were admitted, it would happen that an act with which the owner of the thing mortgaged had had nothing to do would render his situation more dangerous, and would have the effect that a mortgage constituted on another mortgage would be converted into a mortgage constituted directly and immediately on real property, instead of being a mortgage on a right; of which fact we are convinced by sections 144 and 152 of the Mortgage Law and paragraph 4 of section 137 of the Regulations.

"Thirteenth. Concluding that inasmuch as the cross-complaint established is subsidiary; that is to say, as it has been established for the purpose that in case the action should not be dismissed the bank be condemned to return the bondholders the amount of the bonds and to pay those of the coupons due and of the premiums, or that it be made to appear in the registry of property that the mortgages mortgaged as a guarantee for the bonds belong exclusively to the holders of said bonds, no other decision is possible than to dismiss said cross-complaint, as the action cannot be successful.

"Fourteenth. Concluding that the costs must be imposed upon the bank, because its claims have been dismissed.

"After having examined the legal provisions cited, and paragraph 10 of section 21 of the Code of Commerce,

"We adjudge that we should dismiss, and do dismiss, the action

brought by the Banco Territorial y Agrícola against the holders of the mortgage bonds issued by the aforesaid bank in its first five emissions, which are set forth in said action; and we dismiss the cross-complaint brought against the said bank, and the exceptions taken by the parties, with the costs against the plaintiff.

"Thus by this our judgment we pronounce, command and sign it.— Juan Morera Martínez.—Frank H. Richmond.—José Tous Soto."

## The opinion of Judge Tous Soto, reads as follows:

"The undersigned associate judge states, as basis of his opinion opposing the overruling of the dilatory exception of lack of personal capacity of the defendant, Julián E. Blanco, to file a cross-complaint, that Blanco has not proved, upon filing said cross-complaint, or during the time allowed for the introduction of evidence, that he is a holder of mortgage bonds of the Banco Territorial y Agrícola pertaining to the emission involved in this suit. The circumstance that the representative of the bank presented a copy of his complaint in order that it be delivered to Blanco, when he heard of the appearance of the latter as one of the defendants summoned by means of edicts, does not imply recognition on the part of the plaintiff of the personal capacity claimed by the said party, but signifies only the fulfillment of a formality required by the law of procedure.

"In regard to the subject-matter involved in this affair (the decision of which is unavoidable even though the exception taken by the bank had been successful), the judge, writing his opinion, wishes to state that besides the reasons stated in the judgment he has taken into account, for the dismissal of the action, those set forth in the following conclusions:

"First. Concluding that section 208 of the Code of Commerce establishes that mortgage bonds shall have, as special guarantee, the credits and loans existing in favor of the bank or company by which they were issued, and in whose representation they were created, those same loans and credits being specially and particularly liable for the payment of said bonds; from which precept it is clearly evident that by virtue of the law, and without the necessity that the mortgages constituted in favor of a territorial bank be submortgaged in order to guarantee the bonds issued in representation of the mortgages- belonging to the bank, the latter are made liable for the payment of said bonds by simply complying with the requisite of recording in the mercantile registry, as required by paragraph 10 of section 21, the series and number of the titles, the interest on the same, the

amortization premium, and total amount of the emission, and the mortgages made liable for the payment of the same, said record to be made upon the presentation of the act of emission of the bonds, with a statement of the mortgages made liable therefor, and of the deeds of constitution of the latter, without the necessity of presenting the deed of constitution of the latter, and without the necessity of presenting the deed of submortgage of the mortgages liable for the payment of the bonds issued. (Section 23, paragraph 3 of the Code of Commerce.)

"Second. Concluding that from the section cited it is deduced also that the holders of the mortgage bonds are not the owners of the mortgages liable for the payment of said bonds, inasmuch as the bank must make certain mortgages liable for the payment of a certain emission of bonds, which shows that the said bank is the owner of the mortgage which it gives in guarantee; nor does the total number of the mortgages of the bank guarantee all the mortgage bonds of any emission whatever, for the reason stated, and, besides, because then the special and particular guarantee which the mortgages mentioned in the registry must constitute for each specified emission would not exist.

"Third. Concluding, therefore, that although the bank could rescind from the constitution of the mortgages, the annulment of which is requested in this court, yet said mortgages are not void according to law, because the bank cannot be deprived of (the right of) offering to the bondholders, besides a guarantee of a mercantile character granted to them by the Code of Commerce without the necessity of a record of the same in the registry of property, another guarantee, having the proper character of a mortgage, and giving the security granted by virtue of the law, the legal form of submortgages already liable by virtue of the law without the necessity of recording the same in the said registry.

"Fourth. Concluding that if it were true that the constitution of the said submortgages and the subsequent inscription of the same in the Registry of Property does not constitute any new guarantee in favor of the holders of the mortgage bonds this circumstance would be no ground to annul the said deeds or inscriptions; nor is it true that the submortgages do not constitute an additionel guarantee for the bondholders, inasmuch as the bank cannot alienate the mortgage credits to the prejudice of the holders of the bonds which represent the said credits, nor can the latter be canceled unless the bank presents in the registry a number of canceled bonds of the emission involved, the value of which is equivalent at least to that of the credit

ought to be canceled, all of which might occur without the constitution of the mortgages.

"On account of the aforesaid, it is my opinion: First, that the exception of lack of personal capacity of the defendant and recriminator should be declared to have been well taken; second, that the exception of legal defect in the manner of bringing the action should be dismissed; and third, that the action and the cross-complaint should be dismissed.

"San Juan, May, 1904.—José Tous Soto."

The opinion of Judge Richmond is as follows.

"I am glad to have nothing to add to the force and clearness of the just judgment of my learned colleague, in so far as the principal question is concerned.

"I can only say that I find nothing in the charter of the Banco Territorial, nor in the Code of Commerce, nor in the Mortgage Law that could produce the nullity of the submortgages in question. Strictly speaking, the act of constituting the several submortgages executed by the manager of the bank does not constitute a bilateral contract, for the reason that only one party is present, the contract thus being unilateral for that time. Since, as I have indicated, the execution of the submortgages was within the power of the bank, is there any reason to sustain the obligation and to prevent the only party present from dissolving and rescinding the same at his pleasure?

"I do not find in the record any of the bonds issued, and I cannot know whether they contained any clause relating to the submortgage of the principal credits, which might have facilitated the acceptance of the said bonds on the part of the public, in view of the additional guarantee offered by the submortgage.

"I, nevertheless, do firmly believe that the existence of such submortgage inspired more confidence, thereby giving a greater circulation to the bonds, and the annulment and cancellation of the submortgage (which is nothing but a notification of third parties that the holders of the bonds of a specified emission have a preferred right to the money proceeding from the collection of the mortgages) would probably prejudice, or at least could prejudice, the holders of the bonds.

"It is in this way that the present 'nobody can repudiate his own

actions' (which, in the American jurisprudence, is called 'estoppel') must be applied, and the additional guarantee having once been constituted the bank cannot withdraw the same.

"With regard to the exception of legal defect in the manner of bringing the action, I cannot but disapprove of the conception of legal procedure from which such a strange action as the present one has originated.                                          ⟩

"Those sections of the Law of Civil Procedure which treat of summonses require that the name, surname and residence of the defendant, or defendants, be stated in the summons. This is the general rule, and it is a very wise one. In certain cases, for reasons of convenience and without prejudice to anybody, the law permits that unknown persons be summoned in the vague manner employed in this suit; for instance, unknown persons who are summoned to receive an inheritance, and the citation in proceedings relating to ownership, under the Mortgage Law.

"However, such summonses, in order to be legal and valid, require always the sanction of a special provision in the law, and in the absence of such authorization the general rule must prevail; and I do not believe that the judgments of the Supreme Court of Spain, cited in the judgment by the judge are applicable to this case, inasmuch as in the said cases the identity is proved, being indicated by their names and surnames. If at any time an anonymous society had existed under the name of bondholders; if such bondholders had at some time assembled of their own volition though informally and without complying with the requisites of the Code of Commerce, there would be an excuse for the manner in which the action has been brought; but in the situation in which they existed this suit takes the aspect of withdrawing, behind the back of the bondholders, a substantial guarantee without giving them the proper information and notice, and without the special sanction necessary to do it in such a manner.

"With regard to the exception of lack of personal capacity of the party who appeared in court to answer and oppose the action, I believe the manner in which said party appeared in the proceedings to be legally sufficient in order to give him sufficient personal capacity to litigate in an action of the nature of the present one, and which was taken in such peculiar form, and his actual possession of one or more bonds was a matter to be proved in open court, and was of no importance until the court considered whether he was entitled to what he requested in his petition of cross-complaint.

"The foregoing constitutes the legal reasons which I had for dissenting from my colleagues on not overruling the exception of legal

efect in the manner of bringing the action and for overruling the xception of lack of personal capacity on the part of the person who pluntarily appeared in court to oppose the action.—San Juan, P. R., [ay 25, 1904.—Frank H. Richmond, associate judge.''

As against these opinions the bank in discussing the prin-ipal question urges the note of the Registry of Ponce refus-ng to record the submortgage presented to him and the ubsequent confirmation of his action by the General Regis-ries of Property.

On the theory that the submortgage lacked the requisites necessary for inscription, nevertheless it does not confer any right on the bank to attempt to nullify its own acts. Steps to annul the inscription might more properly have been taken by a bondholder of some other emission supposing the mort-gage sought to be annulled was not in his favor.

We think that the bondholders under the law are preferred creditors of the bank with a right to proceed, if their claims are not paid, against any and all of the mortgage credits held by the bank, by the proper court action, if necessary. It is true, as urged by the Registrar of Ponce, that the bank has no power, by specially submortgaging a part of the mort-gaged properties, to withdraw a part of the total mass of the credits from the general guarantee constituted by all; but we hold the making of the submortgage did not have that effect.

Each person who holds a bond must do so knowing the law and the nature of the bank against whom he holds. The fact that a deed is made in favor of a bondholder under a certain emission gives him no superior rights over a bondholder of any other emission. So far as the submortgage aims to do that, we think it is ineffective and unavailing under the law .of this case.

We are not prepared, however, to say that the deed can have no other effect. If, for example, the bank should take up and pay the bonds of the prior emissions leaving only the fifth, we think the submortgage constituted in favor of the bond-holder thereunder would then be effective against all the

world. It is unnecessary for us to speculate what other effects the deeds might have. They are not void, and, as they stand, are an additional guarantee to the bondholder.

From the fact that the bondholders are creditors of the bank it would follow that the mortgage debtors are not directly bound to them and the acts of the bank in making the submortgage cannot prejudice the operations which it is authorized to make under the law, either in the extinction of the mortgages or on the payment of bonds. We are thus agreed with the first, sixth, seventh, eighth, ninth, eleventh, twelfth and thirteenth *Considerandos* of the opinion of the court below and with the conclusions reached on the main question by the other two judges, especially with that of Mr. Tous Soto.

We also agree with the last named that the court below erred in overruling the dilatory exception of lack of personal capacity of the defendant, Julián E. Blanco. The latter never showed that he was a bondholder and we think the bank objected in the proper time and manner to this lack of capacity. The bank was not bound to make him prove his right to sue before giving him a copy of the complaint.

For these reasons the judgment appealed from must be affirmed with the exception of the part which overruled the dilatory exception of lack of capacity of Julian E. Blanco without especial condemnation of costs in either court:

*Affirmed accordingly.*

Chief Justice Quiñones and Justices Hernandez, Figueras. and MacLeary concurred.